## A. GLAVECKE, ADMINISTRATOR, v. A. TIJIRINA.

The fact that the chief justice is a joint owner, with the estate of a decedent, of a tract of land, does not render him interested in the estate, so as to disqualify him, in his official capacity, from appointing an administrator, approving accounts against the estate, or making other orders, having no reference to that tract of land.

The interest that disqualifies the chief justice from acting in such a case is, "when he may be entitled to a *distributive share* of an estate, that is to be settled in his court."

If the chief justice be disqualified by such an interest, as is contemplated by the statute, any two of the county commissioners are empowered to act in his place.

If, however, a case should be presented, requiring orders to be made in relation to the particular property in which the chief justice may have an interest, *not embraced in the statutory provision*, it seems, that no doubt need be entertained, as to the power of the District Court to furnish an adequate and specific remedy.

The private or unofficial acts of the chief justice, in respect to property owned by him, in common with an estate, and which might furnish a ground of action against him, do not affect the question of his competency to act in his official capacity, on those matters pertaining to the estate, concerning which the law has attached no disqualification.

The acts of an administrator, which favor an improper claim of the chief justice, in respect to such an interest, do not affect the competency of the chief justice, but may be urged as a reason for displacing the administrator, either before the County Court, or on appeal to the District Court.

Where there is a plain remedy, by appeal and *certiorari*, from the order or judgment of the County Court, or where the parties interested in such orders or judgments are not made parties to a suit, brought in the District Court, to set them aside, the District Court will not, as to such matters, take cognizance of the case.

And in such a suit, if the private acts of the chief justice be made the subject of complaint, and he is neither made a party, nor is any specific relief sought against him, such as the District Court is competent to afford, the petition will not, as to him, present any cause of action.

APPEAL from Cameron. Tried below before the Hon. E. J. Davis.

The petition of Antonio Tijirina, for a writ of *certiorari*, alleged that his deceased mother, Feliciana Tijirina, left, in the

county of Cameron, and state of Texas, a large quantity of land, supposed to be between nine and eleven square leagues, having, before her death, deeded to Basse and Hord, the interest referred to in the opinion, as belonging to them, which was a part of the tract known as the Agostedora del Esperitu Santo, in said county; that shortly after the death of the said Feliciana, Basse and Hord, by virtue of a writing, signed by them, and recorded in the office of the clerk of the County Court of Cameron county, claimed to locate, (in virtue of the aforesaid deed to them, of said undivided interest of one-tenth,) a league of land, fronting on the Rio Grande, and abutting on the Arroyo Colorado, two of the exterior limits of said whole tract of land, and bounding on its eastern or lower line, along the lands claimed by one Josefa Cavasos, an adjoining proprietress in the said Esperitu Santo grant, which, in the whole, contained about sixty leagues; that a large portion of the front of said league of land, thus claimed and located by the said Basse and Hord, embraced many valuable fields and cultivated places, and was of much greater value than the average of an equal quantity of land, of the said whole portion or inheritance of the said Feliciana.

The petition further alleged, that Basse and Hord had reduced portions of such places to their possession, by placing tenants upon them, and that Basse was, at the death of the said Feliciana, and subsequently remained, chief justice of the said county, and as such, appointed Glavecke administrator of the said estate, and had continued to make various orders relating to the same.

The petition also alleged, that Glavecke was connected in speculation in fire-wood, with one E. Douney, and in the prosecution thereof, permitted waste upon the land of the estate, to a great extent, by the cutting and carrying away of timber; and that the said Basse and Hord were also interested in the said speculation, in virtue of the claim set up by them to the said league, but in what manner, or to what extent, the plaintiff did not specify.

The petition further alleged, that the said Basse, as chief jus-

tice, upon the application of Glavecke, caused an order to be entered on the minutes of the County Court, authorizing Glavecke, as administrator, to pay the one-fifth part of certain expenses, to be incurred by the heirs of Manuel Preito, in reducing to their possession, certain portions of the Esperitu Santo grant, in nowise connected with the estate of the said Feliciana. Also, that Basse, on the application of Glavecke, as administrator, had made various orders, authorizing him to contract for the survey of the interest and claim of the said estate in the said Esperitu Santo grant, and to incur various expenses in respect to the same, notwithstanding the interest aforesaid of the said Basse in the tract of land. That Basse encouraged Glavecke in the wasteful administration of the estate, and that the said orders made by him were illegal and onerous towards all persons entitled to a distributive share of the estate. Wherefore, the plaintiff prayed for a writ of *certiorari* to the said County Court, for the purpose of reviewing the orders made in the matter of the said administration, to the end that the District Court might take the legal and constitutional jurisdiction thereof; and that the petitioner might be appointed administrator, and the said Glavecke removed, the estate finally administered, and distribution thereof made in the District Court.

The other facts of the case appear from the opinion.

*Israel B. Bigelow*, for the appellant.—The constitution authorized the legislature to prescribe and regulate the *original* and *appellate* jurisdiction of the District Court over probate matters; and the legislature, acting under the authority of the 15th section of the 4th Article of that instrument, in the " Act defining the powers and jurisdiction of the District Courts," have declared, " that the District Courts shall have and exercise appellate jurisdiction and general control over the Probate Courts, and original jurisdiction in probate matters, *only* in cases where the judge or clerk of probate is interested." (Hart. Dig., Art. 672.)

In the 136th section of the Act of the 20th of March, 1848,
43

"Regulating the proceedings pertaining to estates of deceased persons," the legislature has explained what it meant by *interest* of the judge of probate, as used in Art. 672; and in the same section it authorizes any two of the county commissioners to perform his duties when he is disqualified.

"That in all cases where a chief justice may have been executor or administrator of an estate in the county where, and at the time, he was elected; or, when a chief justice may wish to probate a will, and accept as the executor of the estate of a testator, in the county where he officiates; or, when he may be entitled to a distributive share of an estate that is to be settled in his court, any two of the county commissioners shall have power to do all acts pertaining to the settlement, partition, and distribution of such estates, that could be done by the chief justice." (Hart. Dig., Art. 1245.)

And lest some case might arise that the provisions of Art. 1245 would not reach, the legislature passed the Act of the 29th of December, 1849, confirming and enlarging the powers of the county commissioners, so as to provide for every possible case:

"That whenever the office of chief justice of any County Court of this state is vacant; or whenever the chief justice of any County Court in this state shall be absent from the county, or unable to discharge the duties of his office, or shall be disqualified from attending to the duties of his office, by reason of *interest*, or from *any other* cause, then any two of the county commissioners of such county shall have power to do and perform all of the duties of chief justice of the County Court." (Hart. Dig., Art. 336.)

What was the object and intention of the legislature in making these several enactments? Evidently, for the purpose of enabling the County Courts to exercise, sustain, and carry out their jurisdiction over all probate matters; and if this legislation has not *repealed by implication* that portion of Art. 642, conferring *original* jurisdiction upon the District Courts, it has

given *concurrent jurisdiction* to two county commissioners, commensurate with that given to the District Courts.

If this position be correct, how did this case stand in the County Court, at and after the chief justice refused to certify it to the county commissioners? And what was the legal remedy for the plaintiff to have pursued? Was it by the writ of *certiorari* to bring the case to the District Court? If this be answered affirmatively, then the question may well be asked, *what* was to be brought to the District Court by that writ? Not a judgment, because the plaintiff in the County Court did not wait to give the chief justice an opportunity to *render* a judgment upon his petition, and of course there was no *judgment* to be appealed from; and without such a judgment as an appeal could have been taken from, no writ of *certiorari* could *legally* issue.

The writ of *certiorari*, under the decisions of this court, is the resort of a party *after* the right of *appeal* has been lost, but not before. (Newson v. Chrisman, 9 Texas Rep. 113.)

It follows, then, that the plaintiff should have waited and allowed the chief justice to enter a *judgment* upon his application, and have appealed from it, if he desired; or have applied for a writ of *mandamus* to compel the chief justice to certify the case to the county commissioners, upon a proper showing of a disqualifying interest in the chief justice to act; these were his remedies, and the only *legal ones* that could have been applied.

The county commissioners were legally authorized, as judges of the County Court, to *assume* and *exercise* the same jurisdiction that the chief justice had acquired, over the petition of the plaintiff; and the plaintiff could not *escape* from the jurisdiction of the County Court by the mode pursued in this action, after having by his own acts and choice, submitted his case to the jurisdiction and action of that court.

It is submitted, that the plea to the jurisdiction of the District Court, and the defendant's demurrer, should have been sustained, and that the court erred in overruling them.

*Ballinger & Jack*, for the appellee.—It is confidently submitted, that the appellant can raise no valid objection to the face of the petition. The allegations are full, clear, and explicit, and comply in all respects with the requisites of the law in such cases. (Mays v. Lewis, 4 Texas Rep. 1; O'Brien v. Dunn, 5 Id. 570.) *Certiorari* was the proper and only mode of *bringing the case* before the District Court. There had been no final decision in the Probate Court, from which an appeal would lie. No appeal would have been sufficient; and *certiorari* was the only method pointed out by law which could reach the necessity of the case—the taking up of the case to the District Court by *its own process*. (Titus v. Latimer, 5 Texas Rep. 433; Newson v. Chrisman, 9 Id. 113.)

The probate judge was charged by the appellee with being a party in interest, and therefore disqualified from sitting in the case. In spite of the most plain and positive proof, he overruled the objection, entered a decree that he was not disqualified by reason of his interest, and refused to certify his interest to the commissioners of the county. The statutes of the State pointed out to the appellee his remedy in the District Court, and he availed himself of it. (Hart. Dig., Art. 642.)

" We believe that where a person, and not the court, is to be acted upon, this jurisdiction may be exercised by proceeding in the usual form, to prevent an injury, or to enforce a remedy. But where it is to control an inferior jurisdiction, by acting upon such tribunal, to restrain its action, or to review, revise, or correct its proceedings, it must be by the use of some process issued from the District Court, or one of its judges. To this there is an exception, that an appeal will lie from the Probate Court to the District Court. This right of appeal, however, does not destroy the right of the District Court to exercise this control in the manner mentioned above, if from any sufficient cause an appeal has not been taken." (Newson v. Chrisman, 9 Texas Rep. 113.)

In the case now before the court, it is submitted, that the direct interest of the probate judge, and the fraudulent com-

bination set forth in appellee's petition to the District Court, were sufficient causes for not allowing the case to go further in the Probate Court, and consequently, for not appealing, but relying on the process of the District Court.

*Stephen Powers* and *F. Cummings*, also for the appellee.

ROBERTS, J.—The estate of Feliciana G. De Tijirina was being administered by Glavecke, under an appointment of the County Court of Cameron county. Antonio Tijirina, son of Feliciana, made an application to the County Court to remove Glavecke, and to be appointed administrator in his stead. Upon this application coming on to be heard, Antonio objected to its being tried and determined by Elisha Basse, the presiding chief justice of the County Court, because he was interested in said estate, "and for other reasons." "Said Basse overruled said objection, and refused to certify his interest in said estate to the county commissioners of said county, so as to give them, or any two of them, jurisdiction in the matter, and continued the case until the next term of said court." Thereupon, Antonio filed his petition in the District Court of Cameron county, complaining of Glavecke as defendant, and asking that all the proceedings of the County Court, in relation to said estate, might be brought before the District Court by *certiorari*, that Glavecke might be removed from the administration, and he, Antonio, appointed administrator, and that the District Court should proceed to administer, settle, and distribute said estate.

The grounds for the removal of the administration from the County to the District Court, were, that chief justice Basse was interested in the estate, and that Glavecke was administering it in a wasteful, fraudulent manner, subservient to his own private interests, which was encouraged by Basse, in his official acts. Exceptions to the petition were overruled, and upon a trial of the facts by the court, it was decreed, that "the several orders touching said estate made by said Basse, as such chief justice, were made without proper jurisdiction of the subject-matter at

the time, and are absolutely void, as to all persons entitled to distributive shares of said estate;" that the District Court will take "jurisdiction of the subject-matter hereof, that the same may be proceeded in agreeably to law and justice, and finally and conclusively administered and conducted to distribution in this court;" that "Glavecke be, and he is hereby removed from the administration of said estate, and that the said Antonio Tijirina be appointed administrator."

We do not think that the grounds set forth in the petition entitle the plaintiff either to the relief prayed for, or to the judgment rendered. The interest of Basse, which is complained of, is shown to be one-half of one undivided tenth part of a ten league tract of land belonging to the said estate. He and Hord, jointly, having an admitted right by deed to one-tenth of the said tract, were tenants in common with the heirs of Feliciana. Such an interest in Basse could not disqualify him from appointing an administrator, approving accounts against the estate, and making all other orders which had no reference to this tract of land. A sale or division of the land might not be necessary by an order of the County Court. It would be only in some such event that Basse's interest in the land could be affected by any order that he might make. Certainly, Basse could have no interest in the question presented, that gave rise to this suit, which was, whether Glavecke or Antonio Tijirina should be the administrator. A decision of that question could not either increase or diminish, or in anywise affect his interest in the land. Nor had he such an interest as disqualified him under the statute, and made it proper for "any two of the county commissioners" to act, in compliance with the motion of the said Antonio in the County Court; for Basse had not been executor or administrator, nor did he seek to be such; nor was he entitled to a "distributive share" of the estate. (O. & W. Dig., Art. 842.)

When it shall become necessary to make an order relating to the land in which he has an interest, then, if he still have an interest in it, his competency may be called in question.

Before such order may be necessary, he may not be in office as chief justice, or he may have transferred his interest in such a way, that he will not then be disqualified from acting. It is unnecessary to anticipate the contingencies which might or might not disqualify him from acting. It is sufficient, that the facts of the petition do not exhibit a disqualifying interest in anything officially done, or attempted, or as yet shown necessary to be officially done, concerning the estate.

In support of the plaintiff's right to maintain this suit, reference has been made to the third section of the Act of 1846, defining the powers of the District Court, in which it is provided, that the said court shall have "original jurisdiction in probate matters, only in cases where the judge or clerk of probate is interested." (O. & W. Dig., Art. 378.) This is in harmony with a corresponding provision of the act of the same session of the legislature, "To organize Probate Courts," which prescribes that " the court shall in no case grant letters of executorship, administration, or guardianship, to the clerk of the Court of Probate; but if the clerk be interested in the estate of the deceased, or is named as executor, or is entitled to guardianship, he may apply to the District Court for letters of administration, testamentary, or guardianship, and in all cases in which the probate judge or clerk may be so interested, the District Court shall have and exercise exclusive jurisdiction." (Hart. Dig., Art. 1084.) This entire act is repealed by the Act of 1848. (Hart. Dig., Art. 1246.) And for the above provision, one is substituted, which more clearly defines the disqualifying interest, and empowers any two of the county commissioners to act in the place of the chief justice. The interest which disqualifies a chief justice by this last act, is "when he may be entitled to a distributive share of an estate that is to be settled in his court." (O. & W. Dig., Art. 842.)

There are two important conclusions to be deduced from a consideration of these provisions of the statutes: 1st. That the disqualifying interest of the chief justice specified in the last act, is the same as that designed to be provided for in the two pre-

vious acts, passed in 1846, and that in all of them, the interest
meant is a distributive share in the estate; for it could hardly
have been intended to disqualify a chief justice, by his in-
terest in the estate, as an ordinary debtor or creditor of the
estate for some trifling amount.   His fees give him a small in-
terest in every estate.   The mere amount of the fees, debts, or
credits, cannot affect the question of disqualification.   It is the
character of the interest.   Being part owner, in common with
the estate, of any piece of property, however small in value,
would give him an interest in relation to the estate, or in con-
nexion with the estate, but not strictly an interest in the estate.
2d. That the legislative mind had undergone a change as to the
appropriate tribunal to act in probate matters, in cases where
the chief justice might be disqualified by his interest; and instead
of the District Court having exclusive jurisdiction, the necessity
of carrying them into the District Court is superseded, by re-
taining them in the County Court, and providing a substitute
there for the chief justice.   The entire want of adaptation to
the transaction of such business ordinarily by the District Court,
in its present organization, might well have suggested the pro-
priety of such a change.

Where, however, a case may be presented, showing it to be
necessary for orders to be made in relation to the particular pro-
perty in which the chief justice may have an interest, not em-
braced in the statutory provision, it is presumed that no doubt
will be entertained as to the power of the District Court to fur-
nish an adequate and specific remedy.   (Constitution of Texas,
sec. 15, Art. 4, O. & W. Dig. 20; Id. sec. 3, Art. 4, O. & W.
Dig. 18; also O. & W. Dig., Art. 377, 378; Newson v. Chris-
man, 9 Texas Rep. 113, and cases cited.)

The acts of Basse and Hord which are set forth, as indicating
an effort to select and appropriate a particular portion of the land,
are private and not official acts.   They may furnish a ground of
action against them, when directly called on to answer, in a suit
having reference to that subject.   And any acts of Glavecke,
as administrator, favoring an improper claim set up by them,

may be urged as a reason for displacing him, either before the County Court, or on appeal before the District Court.

It is not shown, that the order of the County Court, in reference to running the lines of the tract of land, was unnecessary, or that it could affect the private interest of Basse in any way whatever, inconsistent with the interest of the estate.

The charge that Basse, as chief justice, is encouraging and conniving at the wasteful and fraudulent acts of Glavecke, as administrator, having reference to the orders of the court, is an imputation upon the official conduct of Basse, as chief justice. If the charge be true, the orders are subject to revision by the ordinary remedies of appeal and *certiorari*. If this charge be intended to relate to matters not involved in his official conduct, then parties interested in the estate, have a remedy against him individually, for any injury produced by such acts.

The judgment of the court below is based upon the position that Basse had such interest as utterly disqualified him from acting officially in any matter pertaining to this estate from the beginning, which we think is not shown in the petition. It annuls all the proceedings and orders of the County Court, in some of which other persons, not parties to this suit, have an interest, in the nature of judgments, without giving them an opportunity of being heard, to protect their rights. The only party made defendant in the suit, is Glavecke, and no specific relief is sought against him, except his removal from the administration.

The objections, then, to this suit, as the facts are presented in the petition, are, that the chief justice, Basse, is not shown to have any disqualifying interest in relation to anything sought to be done, or shown necessary to be done, concerning the administration of the estate; that for the official acts of Basse complained of, there is no reason shown why there is not a plain remedy by appeal and *certiorari*; that as to the private acts of Basse, there is no specific relief sought, such as the District Court is competent to afford, and he is not made a party to the suit; and that as to the proceedings and orders annulled and

declared void by the judgment, third parties, having an interest in such proceedings and orders, have not been made parties.

We are of opinion, therefore, that the exceptions of the defendant below should have been sustained. Judgment is reversed and the cause remanded.

Reversed and remanded.